## Casner et al. v. Bituminous Casualty Corporation.

Jan. 30, 1942.

Fox & Gordon and Clifton Waddill for appellants.

Gordon, Gordon & Moore, Earle M. Nichols and Abner Johnson, Jr., for appellee.

OPINION OF THE COURT BY JUDGE TILFORD—Affirming.

This is an appeal from a judgment in a common law action tried by the court without the intervention of a jury, and involves primarily the correctness of the court's findings of fact rather than his interpretation of the law applicable thereto.

The appellee is a corporation engaged in insuring employers operating under Workmen's Compensation Acts; and the appellants, hereinafter referred to as the plaintiffs, are respectively, the trustee in bankruptcy of a coal mining corporation which operated under the Kentucky Workmen's Compensation Law, and the mother and only dependent of one A. R. Melton who was killed on November 3, 1937, while in the Coal Company's employ. Compensation for Melton's death had been duly awarded his dependent, and this action was instituted against the Insurance Company to recover the indebtedness created.

Thus supplemented, a recitation of the trial court's findings of fact and law will suffice to present to the reader the issues which that court was called upon to determine:

"Findings of Fact.

"1. Effective June 16, 1936, the defendant issued to Hall-Luton Coal & Mining Company a policy of Workmen's Compensation Insurance No. X-19691. Said policy contained the following provisions:—

" 'This policy may be cancelled at any time by either of the parties upon written notice to the other party stating when, not less than ten days thereafter, cancellation shall be effective. The effective date of such cancellation shall then be the end of the policy period.'

"2. Prior to August, 1937, notices of cancellation of the policy had been given by defendant to Hall-Luton Coal & Mining Co. but by agreement between the parties the policy had not been cancelled.

"3. On August —, 1937, the defendant, by letter to the chief officer of Hall-Luton Coal & Mining Company, gave notice that in the future the provisions of the policy concerning payment of premiums must be complied with.

"4. After this letter, no notice of cancellation was given by the defendant to the Hall-Luton Coal Mining Company until October 21, 1937, when notice was properly given to Hall-Luton Coal & Mining Company that the policy would be cancelled effective November 1, 1937.

"5. The death, the award for which is sought to be collected herein, resulted from an accident which occurred on November 3, 1937.

"6. In November, 1937, and after the happening of said accident, the Hall-Luton Coal & Mining Company, by letter, recognized that the policy had been cancelled effective November 1, 1937, and sought to secure another policy of insurance."

"Findings of Law.

"1. The defendant, under the terms of the policy contract, had the right to cancel said policy at any time upon ten day's notice, and was not estopped to cancel same when it did so in October, 1937.

"2. The notice of cancellation given October 21, 1937, effective November 1, 1937, was an effective cancellation of and did cancel said policy effective November 1, 1937.

"3. The defendant had no policy of Workmen's Compensation Insurance in effect on the risk of the Hall-Luton Coal Mining Company, on November 3, 1937, at the time the accident happened, the award for which is sought to be enforced herein."

The court's findings upon the disputed issues of fact were based upon the testimony of J. Craig Riddle and Hayden Younggren, the former, an agent and adjuster of the Insurance Company, and the latter, its cashier, both of whom were introduced as if under cross-examination by the plaintiff. While somewhat indefinite as to details, it was sufficient, considered in conjunction with the exhibits, to establish the fact that on October 21, 1937, on its usual form, the Insurance Company notified the employer Coal Company of the cancellation of the policy, and that "all liability of this Company will terminate at 12:01 A. M. November 1, 1937. Remarks: For non-payment of August earned premium." It is true that Younggren, who was at that time cashier at the

Louisville office, testified that he mailed the notice to
Riddle at Madisonville on October 21st, and that Riddle
testified that he delivered the notice in person to the sec-
retary of the Coal Company in that City on the same
date. But it is clear from the remainder of Younggren's
testimony that he was referring to the date of the notice
and not the date it was mailed from the Louisville office
to the Madisonville agent, since, as explained by the wit-
ness, "It was our practice at that time to issue those
notices two or three days in advance so that the agent
could receive them and deliver them in time for the 10
day's notice." The plaintiff did not attempt to contra-
dict this testimony; and the fact that the testimony was
given "as if under cross-examination" does not militate
against its effectiveness.

In the second paragraph of their reply, the plain-
tiffs alleged "that the defendant did on October 21, 1937,
attempt to give to the Hall-Luton Coal Mining Company
written notice that it had cancelled said policy effective
at 12:01 A. M. November 1, 1937; but that said notice
was not legally given and was of no force and effect."
And on November 12, 1937, the Coal Company wrote the
Insurance Company the following letter:

"Bituminous Casualty Corp.,
"Louisville, Ky.
"Gentlemen:

"Re: Compensation Policy X-19691

"Your records will indicate that you have in-
sured our mine under the above Policy since we
started business and we have always paid the pre-
miums, altho at times we have been delinquent. We
received the cancellation notice forwarded to us that
was effective November 1st, for the non-payment of
our August premium, but as was our custom, when
we received our check on October 30th, we issued a
check to you for payment of the premium and the
fact that it was not mailed to you until November
3rd was due to an oversight on the part of our book-
keeper. We realize that under a strict interpreta-
tion of the rules and regulations effective cancella-
tions, we had no coverage when the accident occurred
at our mine resulting in the death of A. R. Melton,
however, since we had always paid our premiums
and the fact that the August premium was not paid

before the cancellation went into effect was due to oversight on the part of our employee that should have mailed the check, we feel that you should assume the loss.

"Please reinstate our policy effective November 15th and if you will do this we assure you that our premiums will be paid promptly, in the future.

"Thanking you for your advices, we are,

"Yours very truly,

"Hall-Luton Coal Mining Co.,

"By. James K. Hall Secretary."

While neither the pleading referred to nor the letter is alone sufficient to establish that the notice of cancellation was given on October 21st, they at least, tend to corroborate the positive testimony of Riddle that the notice was delivered on that date.

Admitting that the check for the August premium which the Coal Company had mailed to the defendant on November 3rd, had been returned by the bank on which it was drawn, unpaid, and that the August premium was not in fact paid until November 10, 1937, the plaintiffs sought to avoid the appellee's right to cancel the policy for failure to pay the August premium by alleging in their reply that it had become customary to defer the payment of each monthly premium for a period of ninety days, and for the defendant to give the Coal Company similar notices of cancellation ten days prior to the first of each month and then accept payment of the premium after the first day, and "sometimes as much as 15 days" after the first day of the month. But the letter of the Coal Company dated November 12th, heretofore quoted, indicates that the custom of the company was to pay the delinquent premium prior to the effective date of cancellation stated in the notice, namely, the first day of the ensuing month, and this corroborates the testimony of Riddle that cancellations were voided only when the premium was paid within the ten-day period fixed in the notice. Apparently the last notice of cancellation sent the Coal Company prior to the notice of October 21, 1937, was one sent ten days prior to August 1st. According to Riddle:

"When this policy was cancelled as of August first, the Union called a strike and the men would not

work without Compensation Insurance, and it was then that D. C. Hall came to us and promised to keep his premiums up on a better basis, and he did make some cold checks that we had good, and, of course, the policy was reinstated."

On August 6, 1937, the Insurance Company wrote D. C. Hall a letter reciting that the company had been informed that he was president of the Hall-Luton Mining Company and the Gem Mining Company, and that both of these companies had been "very delinquent in paying their earned premiums on their Compensation insurance and we have had to issue cancellation notices every month in order to get these premiums paid." Omitting those portions of the letter referring specifically to the delinquencies of the Gem Mining Company, the letter proceeded:

"Hereafter we expect these premiums to be paid in accordance with the policy contract stating that all premiums are to be paid by the 15th of the month following the month in which they are earned. Further, if these premiums are not paid at least by the first of the month following, the policy will be cancelled and you will not be covered should any accident occur after the date set out in our cancellation notice.

"In order to give you more time in which to straighten up your account, we will allow you until Sept. 1st to have the earned premiums for the months of June and July paid to this office.

"We trust you will be in a position to abide by the rules set out above, which will not jeopardize your coverage on these two mines.

"Very truly yours,

"Bituminous Casualty Corporation

"By H. B. Younggren, Cashier."

If this letter was not received by the Coal Company, as plaintiffs' counsel suggest in their brief, or, if the Insurance Company committed any act thereafter which misled the Coal Company to its detriment, an effort should have been made to establish those facts by proof. As the record stands, there is nothing to sustain plaintiffs' contention that the Coal Company had reason to

believe that the policy would remain in effect after the expiration of the ten-day period specified in the notice of October 21, 1937, or that it was entitled, by reason of custom, to defer the payment of the August premium beyond the ten-day period designated in the notice.

Of the motives which impelled the Insurance Company to decline to reinstate the policy, we are not called upon to judge. It should be noted, however, that in response to the question, whether the policy would have been in effect until December 1st, if the August premium had been paid on or before November 1st, Riddle answered:

"Not necessarily. Of course, that request that I would send in was simply a request. I had no authority to reinstate or issue policies, but I would have requested the Louisville office to reinstate it. Due to the fact that shortly before this time, we discovered the Hall-Luton Coal Mining Company was covering up pay rolls, and an audit made shortly afterwards developed the fact that about $1200.00 additional premiums were due, I do not think the policy would have been reinstated, even though that premium had been paid by November first."

In reaching these conclusions, we have not ignored the authorities cited by appellants' counsel. Now, as anciently, this court will relieve against forfeitures by applying the doctrine of "Waiver" or "Estoppel," where the conduct of the party claiming the forfeiture has been such as to induce the non-compliance with conditions upon which the forfeiture is based. But, in the case at bar, no question of forfeiture is properly involved, since the policy covered no definite period. It expressly provided that it should remain in effect until cancelled; that a premium should be calculated on the basis of the payroll for the preceding calendar month, and remitted not later than the 15th of each month; that if the premium was not paid by the end of the month, the policy might be cancelled "for non-payment of premium"; and that it might be cancelled at any time by either party upon written notice to the other "stating when, not less than 10 days thereafter, cancellation shall be effective." If the policy, by its terms, had covered a period beyond the date on which the loss occurred, provided it was not cancelled for non-payment in the interim, our conclusions would not be different, since we

find the evidence insufficient to sustain appellants' contention that the Insurance Company, by its conduct, misled the Coal Company to its prejudice. More applicable to the question under consideration than the authorities cited by appellants' counsel is the case of Carden v. Liberty Mutual Insurance Co., 278 Ky. 117, 128 S. W. (2d) 169.

Judgment affirmed.